Good morning everyone. Our first case for argument this morning is Murdock v. Dorothy number 15-1660. Mr. Yohannes. May please court. Good morning. I'm taking all of your questions today. I may have to start with the first one. The facts are different than adults. They're more easily overwhelmed. They may not speak up for themselves in the way we might expect an adult to speak up for himself. When you have a child alone in a room with an interrogating police officer, we don't look at that just as if he were an adult. We look at all the facts and circumstances through the eyes of a child. A child doesn't have the same ability to wave his Miranda And in the facts and circumstances of this case, a voluntary decision is impossible as a matter of law. That's what this case is about. Now the boy's statements here were the linchpin of the case against him. The boy gave a ride to two men, stopped the car, let them out, and tragically the two men went off and shot two other men. But there was no evidence, other than the boy's statements, that he had any idea what was going to happen that day. And even with those statements, in particular his first oral statement, it took three tries to convict him, and he was sentenced to 32 years in prison. Now there's two ways to look at this case. I'm going to focus today on the most narrow way this court can grant relief. The state court, by a four to three margin, the narrowest of margins, held that the boy's statements were voluntary. Even applying edpedeference to that decision, it can't stand because all the facts and circumstances of this case make it far worse than this court's decision in Hardaway. The relevant facts are undisputed. It's undisputed that we have a 16-year-old boy. It's undisputed that the boy was detained and left alone in a room at the police station from about 3 o'clock until about 6.30, and he was then that the police told the boy that they were going to call his grandfather. It's undisputed that the boy's grandfather was actually at the police station, but he was not brought into the room. It's undisputed that no other friendly adult was ever brought into the room with the boy. It's undisputed that no one acting as a juvenile officer was ever brought into the room with the boy. It's undisputed that the boy hadn't finished his first year of high school and had poor grades, so he was not sophisticated for his age in any way. It's undisputed that the boy had no criminal history and had an excellent reputation for being a peaceable student in relation to school activities. It's undisputed that the day before he confessed, the boy had never, before the day he confessed, the boy had never been interviewed by the police before. It's undisputed that the only evidence that the boy actually understood his Miranda rights were a series of one-word answers. So I'll step back and unpack those facts a little bit. Well, if you could, counsel, it would be helpful to recognize the facts that cut the other way as well. We've got a totality of the circumstances standard, right? That's true. We've got a boy who is a juvenile but nearly 17. My list from the state courts of the facts that cut the other way includes his demeanor on the videotape showing him to be relatively calm. He's given Miranda warnings more than once. There's no evidence he's been mistreated. He's offered food, drink, visits to the restroom as needed. He's not been threatened or lied to or abused. The interrogation does not go on unduly long, and no promises are made to him. And he, according to at least one version of the facts that I think we have to credit, does not ask to see anybody else. So the problem that I have, particularly if we're applying deference under the Anti-Terrorism and Effective Death Penalty Act, is given a totality of the circumstances, facts that cut both ways, how can you say as a matter of law it's unreasonable for the state courts to come out the way they did? So ultimately I think the state court reasoning comes down to is that physical coercion or trickery of some sort is required. And that's not the law. So what the state court has... I don't see that bright line rule in the state's decision. I'll explain. May I explain? Please. And so, other than the physical distress, so this is not a case about physical distress, but other than that, the facts found by the state court that he understood his rights, that goes back to a 15-minute video, which can't support those findings. And I think there's three reasons for that. The first is that the video is 15 minutes long, over a three-hour interrogation. Is it correct, though, that the police officer testified that his demeanor was consistent throughout with what was visible on the videotape? He testified to that, but that can't support stretching the video out, and here's why. So the video was in there... the video was there to support the police, to corroborate the police. Given that, it's not reasonable to infer, based on the police, who the video is there to support, that the video effectively supports the police. I don't follow that logic. Okay, so the video is there effectively as a third-party witness of sorts to what's going on in the room, to support the police. So it's not reasonable to rely solely on the police to say that the video covers more than it does. Let me try it this way. At the time of this interrogation, there was no requirement to make any recording of the interrogation, correct? That is true. The totality of the circumstances... So a police officer's testimony about demeanor would have been a sufficient evidentiary basis on its own for a court to find... to make findings about how the boy was behaving, what his demeanor was like, correct? That's true, but that's different from using the video to corroborate the officer's testimony. Why? Because... We allow one witness to establish a fact by testimony, if that witness is believed. Because if you establish a fact by testimony, you recognize that at the end of the day, we have the only people in this room are the police and the child, and it's a swearing contest. And the courts are going to hear the testimony, and they can credit the testimony, but this court can look at all the circumstances to make a legal determination as to whether the confession was voluntary. And in particular, the ultimate question of whether the child was able to process his situation and understand his rights. Because the issue here isn't really whether the child was able to give coherent answers to questions like what happened on date X. The issue is whether the child was able to process his situation and understand his rights and make a voluntary and knowing decision to speak that day. That's really the ultimate question, and that can't be turned into a credibility dispute. It depends on all the facts and circumstances. Does Petitioner challenge any of the state court's factual findings? We are not relying on the disputed facts. We can put the disputed facts off to one side. I'm focusing on the undisputed facts with the note that the ultimate question here, whether or not he actually understood his rights in the situation, is ultimately a legal question. And that, I think, is a key point. And I think one of the key facts that I think relate to that key point, that I think make this case significantly worse than this court has seen before in Hardaway. So first, we don't have a child. You said he was nearly 17. That's true. However, he's still undisputably legally a child. And although we can look at differences among children just like we can look at differences among adults, what we can't do, what this court shouldn't be extremely careful of, is moving the child from the juvenile box into the adult box. The law treats children fundamentally differently. They're not expected to speak up the way an adult would. And that line has to be drawn somewhere. And it's undisputed that my client here is on the juvenile side of that line. And so that relates to the fact that he didn't get to speak to an adult. Because one of the themes that I think runs through the state's argument is that he didn't request an adult. And legally, whether or not legally that's true, it's disputed. So I'm putting that to one side. It doesn't matter because the law doesn't expect children to speak up in the same way as an adult, partly because they don't know what they don't know in the way that an adult would. And on top of that, more than that, worse than that, the grandfather, the child's grandfather, was actually at the police station and was not brought into the room. So that makes this case significantly worse than what this court has seen before. Because what you have here is a child. You've got a child in the police, which is an inherently coercive situation. And the police had the power to, within their own control, to bring an adult into the room and make the playing field level, and they didn't do it. And so they did cause that coercive situation here. No, there's a motion to suppress. That seems to be a big issue. It went back and forth, and ultimately there was a hearing. I know this took a long time, but there was an issue. That seems to be where all this came up in the first place. And the court determined that after hearing the motion to suppress that there was not a huge problem. And so all of this has been argued before that court. And then on to the Supreme Court under the habeas. Well, so first of all, there was some facts that were not considered by the state court, and one of them was the fact that this child had no criminal history at all. The state court, if you look at the only Supreme Court's analysis, they don't talk about that. That was a big deal in a hard way because a child who had been through this situation before, there's a reason to think they understand what's going on. And that's undisputably not the case here. Mr. Johannes, you're into your rebuttal time, but you can use it if you want. Yeah. And I'll just say a couple words about the other way to look at this case, which is the Strickland case. And as three justices of the Illinois Supreme Court explained, that the third prong of Strickland, whether or not the motion was actually meritorious, was not adjudicated here by the last state court to address that. And I went into that in much more detail in my briefs. I don't quite understand, though. You objected to the Illinois Appellate Court's remand for a hearing on the motion to suppress. First of all, that was a remedy that Mr. Murdoch sought from that court. In addition, I have trouble seeing how that would be any different from an inquiry about the prejudice prong of the Strickland claim here. What remedy would you get other than what you've already gotten, a hearing on a motion to suppress? Well, ultimately, he didn't get all of his evidence from the Strickland hearing considered, so he never had that prong considered on the proper record. Well, everything he offered was considered. You're talking about the grandmother's testimony from the earlier hearing? The grandmother's testimony from earlier is the key fact. It was not considered later, yes. Nothing prevented him from offering that, did it? We don't know why it wasn't offered. We don't have a record on that. It's possible that his appointed counsel the second time didn't know about it. We don't know. But the standard required him to put forth all of his evidence in 2007, and he did that to show he met all three prongs. But that evidence ultimately was not considered, and ultimately, regardless of what his lawyer asked for, it's the job of the court to get the law right and the standard entitled him to have that evidence considered. Do you want to save any time for rebuttal? I will reserve the remainder of my time. All right. Thank you very much, Mr. Yohannes. Mr. Becker for the State. May it please the Court. Counsel, good morning. I'm Assistant Attorney General Matthew Becker for the Respondent-Warden. I think what you're questioning, particularly Judge Hamilton's and Judge Mannion's questioning, has brought out so far is that petitioners received a lot of process,   much of it like the 2010 suppression hearing process that he specifically asked for. There's been a lot of scrutiny of the voluntariness issue at the heart of this, and to upset the finality of the Illinois Supreme Court's decision on that or of the conviction would be inconsistent with habeas law and with the values of federalism and comity that undergird that. And I want to focus, time permitting, on a couple of record points and maybe one case law point, and then we'll see where else we go from that. My opponent has laid a lot of stress on Hardaway, and this Court's decision in Hardaway is worth thinking about, but one of the points that Hardaway makes is that there are also differences among minors. So it's not just that minors as a group are different from adults. It's that some minors are different from others, and a 14-year-old is different from a 16-year-old. There's also the fact that although Mr. Hardaway had had a lot more encounters with the justice system than Petitioner here, Hardaway was questioned for about eight and a half hours before he gave his first relatively full confession, and the whole story didn't come out until he had been in custody for 15 hours. Now there's also a question of Petitioner's academic sophistication that's been raised here, and I would just like to point out that the sentencing record makes this look a little bit less dire than perhaps has been presented to you. If you're looking in the record within Document 6-4, starting at about page 1953, Petitioner characterized himself to the probation office when they were preparing a pre-sentence investigation report as a B and C student. He denied having special education. He denied having any mental or substance abuse problems. His mother, in her sentencing questionnaire, and this is at page 1959 of the record, describes him as a C student, and there is a report card from one semester in the record, and there's a mix of grades. There's some failing grades, but there's also a B. Did he just drop out at age 16, or what happened? Why didn't he stay in school, or is that a matter of does he bring it up? He mentions to the probation office, Judge Mannion, that he had had a marijuana issue and had been expelled at one point, and his mother, in her questionnaire for pre-sentencing, says that he's not necessarily a bad student, but he has had some demerits and some conduct-related issues. Now, the whole issue seems to be with grandparents. Now, you mentioned his mother, who does not seem to be in the picture here. No, she was in Texas at the time of this, Your Honor, and so Petitioner was living with his grandparents, but so far as they were aware, and the record showed, no further legal relationship between the grandparents and Petitioner had been established. Well, there are other questions I suppose I wouldn't even get into, but I look at them as kind of strange that we don't know, and that is he was driving a car at 16. We don't know whose car it is, at least I don't, that these other two people, I don't know, entice or whatever for him to drive the car while they get out of the car and go out and kill somebody and then come back in the car. Those normally would see a lot of that about why this 16-year-old has a car. Did he have the liberty to drive someone else or was it their car or whatever? I know that's not maybe necessary here, but it does leave some gaps, just like you bring up the mother. I wonder, where is she? Okay, now you've explained that. I don't need to know, I guess, whose car it was and why he was driving it and was it his grandfather's car, and then two weeks later he's stopped, probably they already knew who he was, driving a car. Maybe you don't know any of that. I know a little bit of that judgment, but I have to be a little circumspect about it because some of this was emphasized at trial and some was not. I don't quite recall whether the van was affiliated with his grandparents or with his uncle, but there was a family connection to the vehicle that Petitioner was driving. As far as the background and why this shooting happened, there's some discussion in the pretrial record among the attorneys and some motions in limine that suggest that this had to do with some tit-for-tat robberies. How old were the killers, I'll call them, or do you know? I'm not aware off the top of my head. All right. But they were older than Petitioner. Okay, that's important, but that's a fact. Yeah, they were older than Petitioner, and this had to do, so far as I'm able to tell from the record, with the fact that the victims of this shooting had previously robbed one of the shooters at a hotel, and Petitioner was aware of this, and in fact there's some discussion from his lawyers sort of early on in the pretrial record that suggests that Petitioner might have been at the hotel where that robbery happened. So this would have been retaliatory. And so if we're doing all of this over again and more evidence were coming in in a trial, you might even think that. Well, it comes down to the Supreme Court decision in Illinois and then the standards for reviewing that. Yes, Your Honor, and under Section 2254D, their determination was reasonable. This case got a lot of scrutiny. The court thought long and hard about it, analyzed the long record, took some fairly sophisticated arguments, and one of the things that was talked about in the Illinois Supreme Court was this video issue that my opponent has also brought up, and it's a little odd to be suggesting that because we have this additional evidence of 15 or 20 minutes of the encounter, it shouldn't be considered. None of the courts here was under the illusion that this video represented the whole of the encounter, and we did have, as Judge Hamilton's questioning pointed out, Detective Muszynski's testimony that Petitioner's conduct in the video was representative of his conduct throughout the entire encounter. And I would add, too, that at the time that this was being argued in state court, Petitioner wasn't saying, oh, well, I had a really hard time before the camera started rolling and then I pulled myself together for the camera. Instead, his theory was that if you watch the video, what you'll see is a scared youth involuntarily confessing, and that's not what the court's to evaluate this thought. Mr. Becker, let me tell you what concerns me most about this record. If I understand this correctly, the key admission by Mr. Murdoch about his knowledge in advance that the other two men intended to shoot the victims appears only in Muszynski's testimony about the oral statement that Murdoch gave early in the interrogation. It's not in the written statement that he signed, and it's not in the videotape. Am I correct about all that? Yes, with just a little bit more nuance that I'd like to add to that, Judge Hamilton. In the written statement, he does mention that he tried to dissuade the shooters from doing whatever they were going to do because he, quote, didn't want to be there. Even the written statement seems to portray some inkling that something really bad is about to happen. The written statement sounds like not enough to convict, however. As a practical matter, it certainly would have been difficult to get a conviction on that, and the mistrials, the first two mistrials, show that the state had some trouble securing the conviction. So the concern that I have is if I understand this correctly, during the videotaped confession or interrogation, Murdoch was never even asked by the officer whether he had known in advance that Fleming and Trapps, the shooters, were intending to shoot Eppenshuler. Well, Detective Muszynski does walk him back through what was said and what Petitioner understood, and Petitioner says something along the lines of they said they were fixing to get him. And if you put that in context with Petitioner's remarks in the video about this prior robbery and the shooters saying, oh, well, these guys shouldn't have robbed us, then that suggests that when Muszynski is interviewing Petitioner and Petitioner says that, Muszynski knows he's referring to shooting, just as happened earlier. And even if that troubles some viewers of the record, obviously the state courts did end up crediting Muszynski's version overall. Given the critical role, though, that Muszynski's testimony about the oral statement played, where I gather Murdoch was quite explicit that he knew what the shooters intended to do, it's hard for me to see a legitimate reason for not asking him point blank on videotape about that. And it starts to at least raise in my mind serious questions about credibility of Muszynski's account of the oral confession. Well, ultimately, Judge Hamilton, under Section 2254D, those doubts still have to be resolved in favor of the state courts. I'm aware of that, but I'd appreciate it if there's any comfort that the state can provide on the merits there, because this 30-plus year sentence of a juvenile hangs on that point. And I think the best I can say about it, Judge Hamilton, is that in humanizing what Muszynski is doing and what Muszynski is thinking and how he's interpreting this and why he might have sort of forgotten to get Petitioner to say more, again, Muszynski knows the background of this case. Muszynski's already walked through the oral statements with Petitioner. And I think to Muszynski at that time when Petitioner was talking about the shooters saying they were fixing to get victims and when Petitioner refers back to this robbery at the hotel, Muszynski knows what that means. And at the very worst, this is sort of not the most optimal police work. It's not the savviest questioning that's ever happened. But that's not a sufficient reason either under 2254D or even 2254A to upset the state court's credibility determination. But I know that there is some doubt here, and in this case that doubt must be resolved in favor of upholding the conviction. One other question for you, Mr. Becker. Were there any state court findings on whether the Petitioner asked to see either of his grandparents during this interrogation process? So there were, yes. There was a statement about Petitioner's request for a guardian. Now, this is delivered in the context of a sort of oral summary of the court's rulings. But I think if you read it carefully, there's a credibility finding there about the request for a guardian. As far as the Illinois Supreme Court, they definitely recount that Muszynski says that Petitioner didn't request a grandparent. That shows up in paragraph 20 of the Illinois Supreme Court opinion. And then they credit Muszynski generally in paragraphs 40, 42, and 46. So they don't necessarily go point by point and talk about each specific contention that Muszynski and Petitioner differed on. But it's quite clear from giving the opinion affair reading that the Illinois Supreme Court credited Muszynski over Petitioner generally. And also on other very specific points. Like, for instance, this promise to let him go if he gave up the trigger man. And that was really the focus of a lot of Petitioner's argument in the post-conviction hearing. He obviously was trying to get the courts to credit that notion of a promise because that would have been a much clearer path forward for him. Well, the murderers were, I assume, caught fairly soon. And I guess one of them told who the driver was. Is that a wrong guess?  Because it was two weeks later when they were trailing him or whatever. However, we don't know any of that. I wish I did know more. Not that we have to know it, but it's something. It would be a lot easier to know why his mother's in Texas and why he's staying with the grandparents and why he dropped out of school, whose car he was driving, and what he was doing two weeks later when they stopped his car. But that's all just nice to know information. I'm not saying it's necessary to know it. And I think, Judge Mannion, that just reflects the fact that all of these cases reflect certain snapshots of people's lives, and they leave out a lot of biographical detail just because of the nature of the thing that we might want to know in a general sort of way. But when it comes to the law, the answers here are pretty clear, and the judgment of the district court should be affirmed. If there are no further questions, we thank you. Thank you, Mr. Becker. Mr. Yohannes, any rebuttal? And how much time does he have? I have three points to make, Your Honors. First is a note on how few facts are disputed here, a brief note about the oral statement, and then about the age of the killers. First, there are only really three facts that are disputed here that I'm aware of. I'm not relying on any of them. First, a dispute about whether he was given Miranda warnings. I'm not disputing that. There was disputed testimony on that. Second, a dispute about whether he asked Muschinski for his grandmother. And again, I've said that's not legally relevant. And third, whether or not Muschinski promised that if the child gave up the trigger man, he could go home. Everything else I think is basically undisputed. And I agree, Your Honor, about the oral statement, that that would not have been enough, and everyone at trial knew that. The prosecution hammered on it in their opening and closing statements. The prosecution put up another police officer, Detective Willis, whose sole purpose as evidence was to corroborate that statement, and he was impeached by the fact he had not filled out a police report. And I might make a final point about the age of the killers. By going to the IDOC website, I find out that Cherie Fleming, who was one of the shooters, would have been 20 years old at this time. The other shooter was a gentleman named, was a man named Cortez Trax. Based on going to the IDOC website, it does not appear that he's currently incarcerated in Illinois for this crime or any other. There was some testimony at trial that he was 21 or 22 at the time. There was an exchange between Muschinski and the lawyer. Thank you very much, Mr. Yohannes. And you took this by court appointment, is that right? I did by court appointment, yes. Okay. You and your firm have the thanks of this court for the excellent work on behalf of your client and on behalf of the court. And we also thank the state for the excellent presentations. The case will be taken under advisement, and we'll move on to the second case after a moment or two to rearrange things here. Okay. Thank you.